WM. BARIE DRY-GOODS CO. *v.* CASLER.

FRAUDULENT DEBTORS—ARREST—SUFFICIENCY OF AFFIDAVIT.

An affidavit under the fraudulent debtors' act, alleging, in substance, that defendant sold to his brother-in-law a stock of goods for less than its value, taking in payment notes running for five years, and that, after the issuance of execution on plaintiff's judgment, defendant was requested to apply the notes on the debt, but refused to do so, though they were then in the hands of his attorney, is *prima facie* sufficient to authorize a warrant of arrest.

*Certiorari* to Eaton; Smith, J. Submitted April 24, 1902. (Docket No 138.) Decided June 3, 1902.

Proceedings by the Wm. Barie Dry-Goods Company against Spurgeon D. Casler under the fraudulent debtors' act. From an order quashing the proceedings, plaintiff brings *certiorari*. Reversed.

*Smedley & Corwin*, for appellant.

*J. B. Hendee* and *Garry C. Fox*, for appellee.

HOOKER, C. J. A warrant was issued under the fraudulent debtors' act by the circuit judge. Upon its return the same officer quashed the proceedings, upon motion, on the ground that the warrant was void for want of a proper showing upon oath. There were two affidavits filed at the time the warrant was applied for, and they are as follows:

" STATE OF MICHIGAN, }
   County of Saginaw. } ss.
" Charles H. Smith, being duly sworn, says that he is the agent and credit man of the Wm. Barie Dry-Goods Company, a corporation organized and existing under and by virtue of the laws of the State of Michigan, and doing business in Michigan, with its principal office at Saginaw, Michigan; that he makes this affidavit for said corporation, and is authorized so to do.

"Deponent further says that Spurgeon D. Casler, formerly of Farnsworth, Wexford county, Michigan, but now residing in Eaton county, Michigan, was justly indebted to the said Wm. Barie Dry-Goods Company, upon contract, in the sum of three hundred seventeen and 29-100 dollars ($317.29), as near as may be, over and above all legal set-offs, which indebtedness, afterwards merged into a judgment, is now due to the said Wm. Barie Dry-Goods Company from said Spurgeon D. Casler, and which is for dry goods sold and delivered by said Wm. Barie Dry-Goods Company to said Spurgeon D. Casler.

"Deponent further says that, for the recovery of said indebtedness, said Wm. Barie Dry-Goods Company, on the 27th day of September, 1901, commenced an action of *assumpsit* against said Spurgeon D. Casler in the circuit

court for the county of Wexford, Michigan, by summons, and that on the 6th day of November, 1901, after due proceedings in said action, judgment was duly rendered therein upon said indebtedness in favor of the said Wm. Barie Dry-Goods Company and against said Spurgeon D. Casler for the sum of three hundred twenty-three and 5-100 dollars ($323.05) and costs, which were afterwards duly taxed at the sum of twenty-three and 30-100 dollars ($23.30), making a total judgment of three hundred fifty-six and 35-100 dollars ($356.35), which judgment remains wholly unsatisfied.

"Deponent further says that the debt due to said Wm. Barie Dry-Goods Company from said Spurgeon D. Casler, as above set forth, is one for which the said Spurgeon D. Casler cannot, by reason of the provisions of sections 1 and 2 of chapter 141 of the Revised Statutes of 1846 (being sections 9553 and 9554 of the Compiled Laws of 1897), be arrested or imprisoned.

"Deponent further says that said Spurgeon D. Casler used to be the proprietor of a general store at Farnsworth, Wexford county, Michigan, and that in the spring and summer of 1901 he, the said Spurgeon D. Casler, bought dry goods on credit from said Wm. Barie Dry-Goods Company, which constituted the original indebtedness hereinbefore mentioned; that on or about the 15th day of July, 1901, while the said bills of dry goods were still unpaid, and without the knowledge of this deponent or of said Wm. Barie Dry-Goods Company, said Spurgeon D. Casler sold out his entire stock of goods, wares, merchandise, and fixtures, of large value, to wit, of the value of one thousand dollars and upwards; that the purchaser of said stock of goods, wares, merchandise, and fixtures is L. G. Van Volkenberg, a brother-in-law of said Spurgeon D. Casler; that deponent, as soon as he heard of said sale, went to Farnsworth, Michigan, and said Van Volkenberg told said deponent that he had given his notes for six hundred dollars to said Spurgeon D. Casler for said stock of goods and fixtures, that said notes were not secured, and that none of said notes would come due for five years; that deponent asked said Van Volkenberg if he knew at the time he bought said goods how much said Casler was owing, and said Van Volkenberg said, 'Yes,' and went to an invoice book, and showed deponent a list of said Casler's debts, amounting to more than $1,528.64, and said Van Volkenberg also told deponent that said Casler had gone to his father's farm, near Eaton Rapids, Michigan;

that deponent went to Eaton county, and interviewed the said Spurgeon D.. Casler, and asked him to pay for said dry goods, which said Spurgeon D. Casler refused to do; that deponent then asked said Casler if it was true that he (said Casler) had sold out to said Van Volkenberg for $600, and had taken his (Van Volkenberg's) notes for said amount, unsecured, all due in five years, and the said Casler replied, 'Yes.'

"Deponent further says that he is informed that execution has been issued on the judgment aforesaid, and has been placed in the hands of the sheriff of Eaton county, and demand has been made upon said Spurgeon D. Casler by said sheriff, and that he unjustly refuses to pay said judgment, or to apply said notes to the payment of said judgment.

"Deponent further says that he is informed that, at the time said Spurgeon D. Casler sold out his stock of merchandise at Farnsworth, he was indebted to different wholesale houses for merchandise in the sum of over $1,528.64, and that none of said indebtedness has been paid, nor has he turned out said notes to pay any of said debts.

"Deponent further says that, from the facts and circumstances herein set forth, that said Spurgeon D. Casler has disposed of his property with intent to defraud his creditors.

"Deponent further says that, from the facts and circumstances herein set forth, that the said Spurgeon D. Casler has evidences of debt which he unjustly refuses to apply to the payment of the judgment which was rendered against him as aforesaid, belonging to the said Wm. Barie Dry-Goods Company.

"Deponent further says that he makes this affidavit as a basis for the issuing of a warrant against said Spurgeon D. Casler pursuant to the provisions of said chapter; and deponent further says that he has personal knowledge of all the facts and circumstances hereinbefore set forth, except as otherwise stated above.

"CHARLES H. SMITH.

"Subscribed and sworn to before me this 15th day of January, 1902.

"HUGO G. WESENER, Notary Public,
"Saginaw County, Michigan."

"STATE OF MICHIGAN, }
    County of Eaton.    } ss.

"Charles O. Smedley, being duly sworn, says that he is

a member of the law firm of Smedley & Corwin, and resides in the city of Grand Rapids, Michigan; that said Smedley & Corwin are attorneys of record for the Wm. Barie Dry-Goods Company, a corporation, who commenced a suit by summons in the circuit court for the county of Wexford, Michigan, against Spurgeon D. Casler; that deponent was present at the time of the commencement of said suit, on the 27th day of September, 1901, and had charge of the same, which suit was commenced by the issuing of a summons in an action of *assumpsit;* and that deponent was afterwards present in said circuit court on the 6th day of November, 1901, at the time judgment was rendered by Judge Clyde C. Chittenden in favor of the Wm. Barie Dry-Goods Company, plaintiff, and against Spurgeon D. Casler, defendant, for the sum of $323.05 and costs of suit, taxed at 23.30.

"Deponent further says that execution was issued out of the said circuit court, and placed in the hands of the sheriff of Wexford county, which execution was returned on the 14th day of January, 1902, *nulla bona.*

"Deponent further says that on the 21st day of December, 1901, he caused an execution to be issued out of the circuit court for the county of Wexford, directed to the sheriff of the county of Eaton, and that said deponent took said execution and placed it in the hands of the sheriff of said county of Eaton, and went with said sheriff to interview the said Spurgeon D. Casler, who was residing with his father on a farm not far from Eaton Rapids, in said county of Eaton. Deponent further says that he asked said Spurgeon D. Casler to pay the amount of the debt called for by said execution, and said Spurgeon D. Casler refused to pay the same; that deponent then told said Spurgeon D. Casler that he had received notes to the amount of six hundred dollars or more from his brother-in-law, one Van Volkenberg, to whom he sold the stock of goods at Farnsworth, Wexford county, Michigan, and deponent asked said Spurgeon D. Casler to turn out said notes to apply on said execution, and said Spurgeon D. Casler refused and neglected so to do; that the sheriff then showed said Spurgeon D. Casler the execution, with the seal of the court impressed thereon, and asked him to pay the same, and said Spurgeon D. Casler told the sheriff that he had no money to pay said execution; that the said sheriff then made a demand upon said Spurgeon D. Cas-

ler for property with which to satisfy said execution, and said Spurgeon D. Casler replied that he had no property to turn out to said sheriff to satisfy said execution; that a copy of said execution, together with a copy of the sheriff's return indorsed thereon, is hereto annexed to this affidavit, and made a part thereof.   Deponent then asked said Spurgeon D. Casler where the notes were that he had obtained from said Van Volkenberg, and he said that said notes were in the hands of his lawyer, Mr. J. B. Hendee, of Eaton Rapids.

"Deponent further says that, after said Spurgeon D. Casler sold out his store at Farnsworth, there has come into the hands of Smedley & Corwin various bills from wholesale houses for goods bought by said Spurgeon D. Casler while at Farnsworth, and which he neglected to pay; that he called said Spurgeon D. Casler's attention to these amounts, a list of which is hereto annexed to this affidavit and marked 'Exhibit A;' that said Spurgeon D. Casler admitted that he owed said different wholesale houses, and some other small bills, but that he was unable to pay for the same, and that all he had received for said stock of goods were the said notes for six hundred dollars from said Van Volkenberg.   Deponent then asked said Spurgeon D. Casler why he had sold out for such a small sum and got no cash whatever, and had taken nothing but promissory notes on long time, none of the said notes coming due for five years, and that said Spurgeon D. Casler would give only evasive and unsatisfactory replies. Deponent further says that said Spurgeon D. Casler is owing other amounts to some wholesale houses, but the amounts and names this deponent has now forgotten, as they were not represented by said Smedley & Corwin.

"Deponent further says that he has good reason to believe and does believe that said Spurgeon D. Casler and his brother-in-law, Van Volkenberg, whose first name is unknown to this deponent, have connived to cheat and defraud the creditors of said Spurgeon D. Casler.   Deponent is informed and believes that the stock of goods turned over by said Spurgeon D. Casler to said Van Volkenberg was worth a sum far in excess of six hundred dollars; that said Spurgeon D. Casler has not paid out any money nor turned over any of said notes of said Van Volkenberg to any of his creditors since he sold out said stock of merchandise at Farnsworth.   Deponent further says that the judgment aforesaid owned by said Wm. Barie Dry-Goods

Company against said Spurgeon D. Casler is wholly unsatisfied.

"Deponent further says that the debt due to said Wm. Barie Dry-Goods Company from said Spurgeon D. Casler was one for which the said Spurgeon D. Casler could not, by reason of the provisions of sections 9553 and 9554 of the Compiled Laws of 1897, be arrested or imprisoned.

"Deponent further says that, from the facts and circumstances herein set forth, that said Spurgeon D. Casler has disposed of his property with intent to defraud his ` creditors. Deponent further says that said Spurgeon D. Casler has rights of action and money and evidences of debt which he unjustly refuses to apply to the payment of said judgment which was rendered against him as aforesaid, and that he makes this affidavit for the issuing of a warrant against said Spurgeon D. Casler pursuant to the provisions of chapter 141 of the Revised Statutes of 1846, and that this deponent has personal knowledge of all the facts and circumstances as hereinbefore set forth, except as otherwise stated above.

"CHARLES O. SMEDLEY.

"Subscribed and sworn to before me this 20th day of January, 1902.

"LOUIS J. DANN, Notary Public,
"Eaton County, Michigan."

They show, in substance, that the debtor had a. stock of goods in Wexford county, and sold them to his brother-in-law for $600, taking his promissory notes, running for five years, in payment; that, after plaintiff's execution was issued, he was asked to apply this property upon the debt, but refused to do so, although it was then in the hands of his lawyer. The only question is whether an inference of actual fraud in the sale, or of an unjust refusal to apply the notes upon the judgment, may lawfully be drawn from the facts stated in the affidavits. We are of the opinion that such an inference might be drawn, and that, in the absence of evidence to the contrary, a *prima facie* case was made.

The order quashing the proceedings is reversed, with costs.

MOORE, GRANT, and MONTGOMERY, JJ., concurred.
LONG, J., did not sit.